UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BAYNE W. ALEXIS,

                                                    Petitioner,

            vs.

                                                                        9:03-CV-1191
WARDEN, Buffalo Federal Detention                                       (C.J. Scullin)
Facility; ATTORNEY GENERAL
OF THE STATE OF NEW YORK,

                                                    Respondents.

_____

APPEARANCES                                    OF COUNSEL

BAYNE W. ALEXIS
Petitioner pro se
230-37-243
Buffalo Federal Detention Facility
4250 Federal Drive
Buffalo, New York 14020

GLENN T. SUDDABY                               JAMES W. GRABLE
United States Attorney                         Spec. Asst. U.S. Attorney
Northern District of New York
Attorney for Federal Respondent
District Counsel- Buffalo District
130 Delaware Avenue, Room 203
Buffalo, New York 14202

ELIOT SPITZER                                  PATRICK F. MacRAE
Attorney General of the                        Asst. Attorney General
State of New York
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., United States District Judge pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).

Petitioner brings this application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. There are currently two respondents in this action, the Warden of the Federal Detention Facility in Buffalo, New York (Federal respondent) and the Attorney General of the State of New York (State respondent).

Presently before the court are two motions, one by the Federal respondent and one by petitioner. (Dkt. Nos. 32, 38). The Federal respondent has moved to dismiss this action based on the argument that the petitioner is not challenging his *federal custody*. (Dkt. No. 32). The petitioner has moved for a stay of deportation. (Dkt. No. 38). The Federal respondent has opposed petitioner's motion. (Dkt. No. 37). The State respondent has filed an answer and memorandum of law in opposition to the petition for habeas corpus. (Dkt. No. 34). Petitioner has filed his opposition to the federal respondent's motion to dismiss. (Dkt. No. 33).

For the following reasons, this court agrees with respondents and will recommend granting the Federal respondent's motion, denying petitioner's motion, and recommend dismissing the habeas petition in its entirety.

2

## DISCUSSION

**1.     Procedural History**

Petitioner originally filed this action in the Western District of New York.  On September 19, 2003, United States District Judge David Larimer transferred petitioner's case to this district because although the petitioner was *in custody* in the *Western* District of New York, the petition appeared to be challenging petitioner's November 28, 2001 adjudication as a second felony offender in the Oswego County Court in the *Northern* District of New York. (Dkt. No. 8).  Judge Larimer noted that petitioner filed the petition as an application for a writ of mandamus, however, the case was cognizable, if at all, as a petition for writ of habeas corpus under 28 U.S.C. § 2254. *Id.*

After this case was transferred to the Northern District of New York, Chief Judge Scullin issued an order on October 9, 2003, affording petitioner an opportunity to recharacterize his petition as an application for writ of habeas corpus. (Dkt. No. 10).  In the order, Judge Scullin informed petitioner that the petition, as written, was cognizable only as a petition for habeas corpus under section 2254, but that before the court could recharacterize the petition, the petitioner had to be given the opportunity to consent to the recharacterization or to withdraw the petition. *Id.*  If petitioner consented to the recharacterization, he was ordered to submit an amended petition in the proper form. *Id.*

On October 22, 2003, petitioner submitted a document entitled "Petition for Writ of Habeas Corpus", specifically citing 28 U.S.C. § 2254 in the caption. (Dkt. No. 11).

3

Although the court interpreted this filing to be a consent to recharacterization, the document itself did not comply with Rule 2 of the Rules Following Section 2254 Cases. On November 21, 2003, Chief Judge Scullin ordered petitioner to file another amended petition, correcting the errors in the October 22, 2003 filing. (Dkt. No. 15).

On February 2, 2004, petitioner filed his second amended petition. (Dkt. No. 18). On April 12, 2004, Chief Judge Scullin ordered that the Attorney General of the State of New York be added as a respondent; ordered service of the amended petition; and further ordered that both respondents file answers to the petition. (Dkt. No. 19).  Both respondents have filed appropriate oppositions, one in the form of a motion to dismiss and the other, in the form of an answer and memorandum of law. (Dkt. Nos. 32, 34).

## 2.   <u>Federal Respondent's Motion to Dismiss and Petitioner's Motion to Stay</u>

The court will treat these motions together because the resolution of the Federal respondent's motion will resolve petitioner's motion to stay his deportation. Petitioner's confusion in this action stems from the fact that he is in the custody of the United States Immigration and Customs Enforcement (ICE) Officials.  He is attempting, however, to challenge his New York ***State Court*** sentence.  Petitioner is currently in federal custody, awaiting removal under a final removal order.  It is unclear whether petitioner believes that a favorable decision in this case would affect his impending removal.

Petitioner has already been unsuccessful in challenging his removal order in

federal court in the Western District of New York.  In *Alexis v. Holmes*, 03-CV-0025

(W.D.N.Y. Sept. 29, 2004), Magistrate Judge Hugh B. Scott denied petitioner's 28

U.S.C. § 2241 habeas corpus challenge to his removal order, holding that the

Immigration Judge did not err in finding petitioner removable as an aggravated felon.

Petitioner appealed Magistrate Judge Scott's order to the Second Circuit, and on

January 12, 2005, the Second Circuit dismissed the appeal because it had no arguable

basis in law or fact.[1]

    In this action, petitioner is challenging ***only*** his state court conviction, not his

custody by the Federal respondent, nor his removal order which he already

unsuccessfully challenged in the Western District of New York and in the Second

Circuit.  The Federal respondent is simply ***not a proper respondent*** in a state habeas

petition alleging the invalidity of a ***state court sentence or conviction***.  In the Advisory

Committee Notes following Rule 2 of the Rules Governing Habeas Corpus Petitions, it

states that in a situation such as the one in this case in which the applicant is neither in

jail pursuant to the state action he is attacking nor is he on probation or parole due to

the state judgment he is attacking, the ***proper respondent*** is the Attorney General of the

State of New York. 28 U.S.C. fol. § 2254, Rule 2, Advisory Committee Notes.  That is

the reason that the Attorney General was added as a respondent, and he has properly

---

[1] Petitioner was able to appeal directly to the Second Circuit from Magistrate Judge Scott's
order because petitioner had consented to proceed before the Magistrate Judge pursuant to 28 U.S.C.
§ 636(c).

responded to the petition.  Thus, the Federal respondent may be dismissed from this action.

The court also notes that petitioner could not have challenged any of his state court convictions in the Western District section 2241 petition even if the state court convictions were used as bases for the removal order, and petitioner were claiming that those state court convictions were invalid. *See Harris v. Immigration and Naturalization Service*, 03-CV-2399, 2004 U.S. Dist. Lexis 8850, *4-6 (E.D.N.Y. May 3, 2004)(citing *inter alia Pietre v. Bintz,* 01-CV-260, 2003 U.S. Dist. LEXIS 4453, *11 (N.D.N.Y. March 25, 2003)(a habeas petition brought pursuant to section 2241 cannot be used to challenge petitioner's underlying state convictions)).  Additionally, until an alien has his underlying conviction overturned in a collateral action against the ***state***, the INS[2] may rely upon the conviction as a lawful basis for detention and deportation.[3] *Talbot v. Ashcroft*, 04-CV-653, 2004 U.S. Dist. LEXIS 7042, *5 (D. Conn. April 23, 2004).

To the extent that petitioner has moved for a stay of deportation, it has been held that the fact that a petitioner has a pending ***collateral attack*** on the conviction allegedly supporting his removal proceeding, does ***not provide a basis for staying the***

---

[2] Pursuant to the Homeland Security Act, (Pub. L. No. 107-296), the Immigration and Naturalization Service was abolished on March 1, 2003, and its functions were transferred to the newly created Department of Homeland Security (DHS).  The enforcement functions of the INS were transferred to the Bureau of Immigration and Customs Enforcement (BICE).

[3] "Deportation" is now known as "removal."

***enforcement of the immigration laws.*** *Talbot*, 2004 U.S. Dist. LEXIS 7042, *6.  Since

this action challenging petitioner's state conviction is a collateral attack to the

conviction, it cannot support petitioner's motion for a stay of deportation, and

petitioner's motion must be denied.[4]  Thus, to the extent that the Federal respondent

would have been a proper party for petitioner's request to stay his deportation, because

that request must be denied, there is no need for the Federal respondent to remain in

this action.

**3.**    **State Habeas Petition**

After various attempts at amending his petition, the claims raised are still a little

unclear, however, the court has interpreted the petition to raise the following issues:

1.    Petitioner's plea to the 2001 charges was involuntary.

2.    Petitioner received ineffective assistance of counsel.

3.    Petitioner was denied his right to appeal.

4.    Petitioner was improperly sentenced as a second felony offender.

The State respondent argues for denial of the petition, claiming both that

petitioner has not exhausted his state remedies as to all his claims, and that the petition

fails on the merits.  In support of respondent's arguments, he has submitted a

_____

[4] The court also notes that the conviction petitioner challenges in this case was not the only charge used to support petitioner's removal. *See Alexis v. Holmes*, 03-CV-25, at 3 (W.D.N.Y. Sept. 29, 2004).  In fact, the Immigration Judge found petitioner removable based on a 1997 "aggravated" felony conviction. *Id.*  To the extent that this petition attempts to challenge the 1997 felony, petitioner's inability to do so will be discussed below.

memorandum of law together with the pertinent state court records.[5]  For the following

reasons, this court agrees with respondent and will recommend denial and dismissal of

the petition.


**A. Exhaustion**

The law is well-settled that prior to bringing a petition for habeas corpus

pursuant to 28 U.S.C. § 2254, a petitioner must exhaust his state court remedies with

respect to each claim presented in his federal application for habeas relief. *Baldwin v.*

*Reese*, 541 U.S. 27 (2004).  In order to exhaust his state court remedies, the petitioner

must "fairly present" his claims in each appropriate state court, alerting the court to the

federal nature of the claim. *Id.* (quoting *Duncan v. Henry*, 513 U.S. 364, 36-66 (1995)).

The petitioner must have informed the state court of ***both*** the factual ***and*** legal premises

of the claims that he is attempting to bring in federal court. *Id.*

There are two prongs to the exhaustion analysis: first, petitioner must have fairly

presented his claim to the state court; and second, once presented, the petitioner must

appeal the denial of his claim to the highest court available in the state for review of

that claim, including applying for discretionary appellate review. *Garraway v. Phillips*,

02 Civ. 9657, 2004 U.S. Dist. LEXIS 8627, *8-9 (S.D.N.Y. May 13, 2004)(citations

---

[5] The state court records are listed on pages 2-3 of respondent's answer. (Dkt. No. 34, Attachment 1).  The state court records are listed as Exhibits A-T.

omitted).

In this case, petitioner did not file a direct appeal of his conviction.  Petitioner now seems to claim that his failure to appeal was the state court judge's fault because the judge told petitioner he could not appeal from his plea.  However, the state court judge was correct in telling petitioner that he could not appeal since petitioner waived his right to appeal as part of his plea bargain. Plea Transcript (PT) at 5, 11.  At the time of the plea, petitioner stated that he understood that he was waiving this right. *Id.*  The court did inform petitioner that he still had the right to challenge any part of the *sentence* that was illegal or in violation of the plea agreement. (PT at 11).

Petitioner did file a collateral motion to vacate his sentence under N.Y. CRIM. PROC. LAW § 440.20 in the Oswego County Court.  In that motion, petitioner alleged that he was (1) illegally arrested; (2) illegally sentenced as a second felony offender; and (3) received ineffective assistance of counsel in connection with his plea and sentencing. Respondent's Ex. O.  The Oswego County Court Judge denied petitioner's motion, holding that petitioner was properly sentenced as a second felony offender, that he failed to establish that he received ineffective assistance of counsel; and that the illegal search and seizure (arrest) claim did not survive his plea of guilty. Respondent's Ex. Q.  The County Court Judge also held that petitioner could not raise the search and seizure issue for the first time in a section 440.20 motion.

Petitioner applied for leave to appeal the denial of his section 440.20 motion.

Respondent's Ex. R.  In his application for leave to appeal, petitioner added some new allegations to his case.  Petitioner claimed that his plea was not voluntary because the trial court judge neglected to inform petitioner of the immigration consequences of pleading guilty. *Id.* at 2.  Petitioner also added that his attorney was ineffective for failing to "request a recommendation against deportation." *Id.* at 3.  Petitioner also elaborated on the claim that he was improperly sentenced as a second felony offender. *Id.* at 6-8.  Petitioner also submitted a supplemental memorandum of law to the Appellate Division, Fourth Department. Respondent's Ex. S.  In this supplemental memorandum, petitioner also asserted for the first time, that his January 1997 conviction was invalid. *Id.* at 2-6.  The Appellate Division, Fourth Department denied petitioner's application for leave to appeal by simply stating that "there is no question of law or fact which ought to be reviewed by this court... ." Respondent's Ex. T.

Petitioner has failed to exhaust his claim of involuntary plea as well as his claim that his attorney was ineffective in failing to investigate the defense of entrapment. Although petitioner ultimately raised some involuntary plea issues in his application for leave to appeal the denial of his section 440.20 motion and raised other issues regarding ineffective assistance of counsel, petitioner did not raise these claims in a court that would have had jurisdiction to consider them.

Petitioner did not file a direct appeal from his conviction, and a section 440.20 motion may address ***only the validity of the sentence, and an order under this section***

10

***does not affect the validity or status of the underlying conviction.*** N.Y. CRIM. PROC.
LAW § 440.20(4).  The first section of this statute provides that at any time after a
conviction, the court in which the judgment was entered may set aside ***the sentence*** on
the grounds that it was unauthorized, illegally imposed, or otherwise invalid as a matter
of law. *Id.* § 440.20(1).  Thus, any claim that petitioner raised in his section 440.20
motion that was not related to the validity of the sentence alone was not properly before
the state court and is not exhausted since bringing the claim in a state court without
authority to consider the claim would not afford the state court a "fair opportunity" to
decide the claim.  Thus, petitioner's claims of involuntary plea, illegal arrest, and
ineffective assistance of counsel relating to the alleged failure to investigate the defense
of entrapment would be unexhausted.

It is unclear whether petitioner would now be able to return to State court to raise
any of these claims.  Petitioner's time for direct appeal, even if it had not been waived
as part of the plea agreement, is long past.  The only avenue for plaintiff to possibly
return to State court would be to file a collateral motion to vacate his conviction
pursuant to N.Y. CRIM. PROC. LAW § 440.10.  A section 440.10 motion would also be
problematic because petitioner would have to be successful on his claim of involuntary
plea prior to any consideration of the other issues since the failure to investigate and the
illegal arrest claims would be waived by his plea to the charges under both New York
and Federal laws. *See Lebowitz v. United States*, 877 F.2d 207, 209 (2d Cir. 1989);

*People v. Rodriguez*, 238 A.D.2d 150, 655 N.Y.S.2d 953 (1ˢᵗ Dep't), *lv. to appeal denied*, 90 N.Y.2d 897, 662 N.Y.S.2d 440, 685 N.E.2d 221 (1997).

Petitioner would only be able to attack the voluntary and intelligent nature of his plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). It has also been held that a voluntary guilty plea also waives any claims of ineffective counsel except as they relate to the voluntariness of the plea. *United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996). The other issue that arises is that if the facts supporting petitioner's claims were "on the record", then section 440.10 may not be available. *See* N.Y. Crim. Proc. Law § 440.10(2)(c)(if the record provided sufficient facts to raise the claim on appeal, but petitioner unjustifiably failed to raise the issue, he cannot pursue a section 440.10 claim).

Finally, if petitioner cannot return to State court because there are no available State court remedies as in the illegal arrest and ineffective assistance of counsel claims, the court must "deem" petitioner's claims exhausted and proceed to a procedural default analysis. *Bossett v. Walker*, 41 F.3d 825 (2d Cir. 1994)(citing *Grey v. Hoke*, 933 F.2d 117, 120-121 (2d Cir. 1991)), *cert. denied*, 514 U.S. 1054 (1995).

A state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim only if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or establish that failure of the court to

consider the claim will result in a miscarriage of justice. *Id.* at 748.  A miscarriage of justice will have occurred if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If in fact, petitioner could return to State court, then his claims are unexhausted. Assuming this is the case, however, under the habeas statute, the court may deny **unexhausted** claims **without** sending petitioner back to state court to exhaust whatever remedies he might have. 28 U.S.C. § 2254(b)(2).  The court may exercise its discretion and deny any unexhausted claims, however, the standard for whether this discretion should be exercised has not been clearly stated. *See Oraca v. Walker*, 53 F. Supp. 2d 605, 610 (S.D.N.Y. 1999).  Some courts have relied on a "patently frivolous" standard. *Id.* at 612 (citing cases).  The court in *Oraca* noted that the "real standard" being used is reaching the merits when exhaustion may be questionable, but the lack of merit is easily shown. *Id.* at 612 n.10 (citing cases).  In *Naranjo v. Fillion*, 02 Civ. 5449, 2003 U.S. Dist. LEXIS 6287, *30 (S.D.N.Y. April 16, 2003), the court found that the majority of district courts have been using the "patently frivolous" standard.

In this case, the petitioner's claims of involuntary plea, illegal arrest, and ineffective counsel regarding the investigation of an entrapment defense appear to be unexhausted.  If petitioner could go back to State court, he would probably only be able to raise the involuntary plea claim.  The other two claims may be "deemed" exhausted,

and the court finds that petitioner has shown neither cause nor prejudice for his failure to raise these claims.  Thus, the illegal arrest claim and that portion of the ineffective counsel claims may be dismissed.  With respect to the unexhausted plea claim, the court need not undertake a complicated analysis of exhaustion or procedural default, and the court should exercise its discretion to *dismiss* the unexhausted claim because it is clear that it is "patently frivolous."

### B.  Involuntary Plea and Ineffective Assistance of Counsel

The standard of review in a habeas action depends upon whether the state court considered petitioner's constitutional claims "on the merits."  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the state court ruling *on the merits* of a federal constitutional issue was either "'contrary to ... clearly established Federal law' or 'involved an unreasonable application ... of clearly established Federal law.'" *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001)(quoting 28 U.S.C. § 2254(d)(1))(alterations in original).

Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-13 (1995).  When presented with these questions, the court was empowered to conduct an independent review of the record. *Id.* The factual findings of the state court, however, were presumed to be correct absent

14

circumstances listed in the statute, such as cases in which the factual finding was not fairly supported by the record.  28 U.S.C. § 2254(d) & (d)(8).  The AEDPA requires the court to apply a more deferential standard, placing new restrictions on the power of federal courts to grant writs of habeas corpus to state inmates. *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

In order to apply the AEDPA standard, the petitioner's claim must have been "adjudicated on the merits" in the State court proceedings. 28 U.S.C. § 2254(d)(1). Additionally, the AEDPA provides that a state court's fact findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. *Id.* § 2254(e)(1).  If the State court has failed to adjudicate a claim "on the merits", the pre-AEDPA standard of review applies, and the court reviews both questions of law and mixed questions of law and fact *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

The Second Circuit has articulated a standard to determine whether a state court decision is on the merits. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001), *cited in Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002).  However, since petitioner's involuntary plea claim in this case is unexhausted, it is unnecessary to engage in a lengthy analysis because the state court clearly did ***not*** decide petitioner's claim "on the merits."  The state court did not have the opportunity to decide petitioner's claim at all. The Oswego County Court focused upon the sentence imposed and upon a general

15

claim of ineffective assistance of petitioner's first attorney who petitioner stated attempted to negotiate a plea and thereby impaired petitioner's legal rights.

A guilty plea must represent a voluntary and intelligent choice among the alternative courses of action open to the individual. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Petitioner may only attack the voluntariness of his plea by showing that counsel's advice was not within constitutional standards. *Lefkowitz*, 420 U.S. at 288.

Claims of ineffective counsel are analyzed according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Petitioner must prove that counsel's representation 'fell below an objective standard of reasonableness' judged by 'prevailing professional norms.' *Id. See also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998). He must then show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Strickland,* 466 U.S. at 694; *Jackson*, 162 F.3d at 85. In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance. *Strickland*, 466 U.S. at 689.

The same standard is applicable to counsel's performance in the context of a guilty plea. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To prevail, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 57, 59; *accord United States v. Gonzalez*, 202 F.3d 20,

16

25 (1st Cir. 2000).

In this case, petitioner was originally charged with Criminal Sale of a Controlled Substance, Third Degree (a Class B Felony); Criminal Possession of a Controlled Substance, Third Degree (a Class B Felony); Criminal Possession of a Controlled Substance, Fifth Degree (a Class D Felony); and Criminal Use of Drug Paraphernalia, Second Degree (a Class A Misdemeanor). Respondent's Ex. A.  The charges resulted from petitioner's sale of .85 grams of cocaine in his home to another individual.  As a result of the plea agreement, petitioner was allowed to plead guilty to the Criminal Possession of a Controlled Substance, Fifth Degree.  He was sentenced as a second felony offender, and was sentenced to three to six years incarceration, however, he was allowed to attend a 90 day program at a drug treatment facility and was then released to execute the rest of his sentence on parole.

Petitioner states that his plea was involuntary because his attorney should have investigated a defense of entrapment.  Plaintiff does not state that he did not possess the drugs, in fact, he states in the habeas petition that the "girl friend who I gave the cocaine to was not her co-worker as she said but an agent." Habeas Petition at 5. Petitioner then states that he was "entraped [sic]" into "sharing my cocaine I had for my personal use with her and her co-worker girlfriend not knowing that she was not her co-worker." *Id.* at 6.  Basically, petitioner admits even in the petition that he possessed the cocaine, and that he "shared" it with someone else.  He appears to be upset because the

17

individual with whom he "shared" the cocaine turned out to be "an agent."  Petitioner

also alleges that his attorney "made" petitioner agree to say that he possessed the

controlled substance.  Petitioner admits in his petition that this was the truth.

In order to establish the defense of entrapment under New York law, the

defendant must prove by a preponderance of the evidence that he was actively induced

or encouraged to commit the crime by a public official, and that this encouragement or

inducement created a substantial risk that the defendant would commit the crime when

he was not otherwise disposed to commit it. N.Y. PENAL LAW § 40.05.

In this case, petitioner pled guilty only to possession, not to the sale of the drugs,

and his own habeas petition admits that he possessed the cocaine, albeit "for personal

use."  Thus, even if petitioner is correct that his attorney did not investigate the

"entrapment" defense, it would have no bearing since petitioner did not plead guilty to

the sale of a controlled substance.  Petitioner seems to confuse "entrapment" with sale

to an "agent" of the police.  The fact that the person to whom petitioner gave the drugs

worked or was cooperating with the police does not *per se* rise to the level of

entrapment.

Because it appears that an "entrapment" defense would not have been successful,

petitioner cannot fault his attorney for failing to pursue it.  Additionally, given the

benefit petitioner received as a result of the plea agreement, petitioner cannot show that

but for his attorney's alleged failure to discuss or investigate this alleged entrapment

defense, petitioner would have not pled guilty and would have insisted on going to trial. Petitioner also claims that his attorney was ineffective because he "advised" petitioner to plead guilty. Assuming this statement is true, given the undisputed facts and the very beneficial treatment petitioner received, there is no indication that counsel's advice fell below a "reasonable" standard. Thus, this claim of ineffective assistance of counsel would fail.

Petitioner also seems to claim that the County Court Judge did not inform petitioner of the deportation consequences of his guilty plea. Petitioner may be attempting to claim that he would not have pled guilty if he knew that he was likely to be deported. Petitioner alleges that the trial judge told petitioner that the judge "was not sure" of the consequences of petitioner's plea. Unfortunately, petitioner cites only *part* of the judge's comments regarding deportation.

The trial court judge raised the issue of petitioner's immigration status. The judge specifically stated:

> **THE COURT:** One other thing I have to advise you, by entering a plea of guilty here to a felony, do you understand that potentially your status here in this country could be terminated? I don't know the permanent residency. I don't know exactly what status that is, but ***do you understand deportation proceedings could be commenced***?
>
> **THE DEFENDANT**: *Yes, sir*.
> **THE COURT:** Pardon?
>
> **THE DEFENDANT:** I think so.
> ...

19

**THE COURT**: Knowing all that, do you still wish to proceed to enter a plea of guilty?

**THE DEFENDANT:** Yes, sir.

(PT at 14). Although the trial court judge might not have known the specifics of what might happen or what petitioner's status was, it was *clear* that petitioner was informed that by pleading guilty, he was subjecting himself to deportation, and that deportation proceedings could be commenced. The trial court judge also covered all the other rights that petitioner was giving up as a result of the plea, including the right to appeal. (PT at 8-11).

There is absolutely no basis for petitioner's claim that he would have not pled guilty and instead insisted on going to trial. First, petitioner pled only to the possession charge, and he is simply incorrect in his claim that the trial court did not inform him of the consequences of his plea, even if the failure to do so would have risen to the level of a constitutional violation.

### C. Sentence

Although it appears that every time petitioner amends his petition, he adds arguments and claims, the court believes that the crux of petitioner's habeas petition is the claim that he was improperly sentenced as a second felony offender. That is the claim that he brought in State court, and that is the claim that he emphasizes in his multiple submissions to this court. Petitioner also claims that his attorney was

ineffective in failing to challenge the prior felony that formed the basis for petitioner's second felony offender status. Petitioner did bring these claims in his section 440.20 motion, and the County Court Judge did decide them on the merits. Once again, petitioner's claims have no merit regardless of the standard used to analyze them.

The court would first point out that generally, no constitutional issue is presented where the state sentence is within the range prescribed by state law. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Petitioner in this case pled guilty to Criminal Possession of a Controlled Substance, Fifth Degree, a Class D Felony, and was sentenced as a second felony offender to three to six years imprisonment. Under N.Y. PENAL LAW §§ 70.06(3)(d) and 70.06(4)(b), a second felony offender must be sentenced to an indeterminate term of imprisonment where the minimum term is one half the maximum term. The maximum term for a Class D felony at least four, but not more than seven years. *Id.*

In this case, petitioner was sentenced as a second felony offender to a period of incarceration of three to six years, ***well within the statutory range***, and he was ultimately allowed to be released from confinement so that he could execute his sentence on parole.[6] Petitioner claims, however, that he is not a "second" felony offender. The prior felony was a 1997 conviction for Attempted Criminal Sale of a

---

[6] Petitioner never got the opportunity to do so because he states that he was taken into custody by the INS upon his release from the 90-day drug treatment program.

Controlled Substance, Third Degree, a Class C Felony.  When petitioner pled guilty to this 2001 charge, he was asked specifically whether he had been convicted of a prior felony. (PT at 12).  Petitioner answered in the affirmative. *Id.*  A second felony offender statement was filed by the District Attorney. Respondent's Ex. I.

Petitioner does not claim that he was not convicted of Attempted Criminal Sale of a Controlled Substance in 1997.  He claims that because he received a sentence of probation on the 1997 charges, and that the probation was interrupted when he was arrested on the 2001 charges, the Oswego County Court could not use the 1997 felony as a predicate felony.

Petitioner's claim in this regard is totally meritless.  The definition of a felony is based on the possible authorized sentence, not upon what petitioner actually received as a sentence on the charge.  As the Oswego County Court Judge stated in his section 440.20 decision, (Respondent's Ex. Q), New York law specifically provides that a sentence of probation ***is considered a sentence for purposes of second felony offender treatment***. N.Y. PENAL LAW § 70.06(1)(b)(iii).  This section also provides that the sentence must have been imposed before the commission of the present felony. *Id.* 70.06(1)(b)(ii).  In this case, petitioner's prior sentence was "imposed" in 1997, and the present felony was committed in 2001, thus complying with the terms of the statute.

Petitioner's argument that his 1997 sentence had to have been "completed"[7] prior to the new felony is simply not the law.  Petitioner also now seems to claim that the 1997 sentence was invalid, and states that he is currently challenging the validity of the 1997 sentence by way of habeas corpus in the Southern District of New York.[8] (Dkt. No. 18 at p.14).  It appears that petitioner has brought actions in almost every federal district court in New York in order to invalidate either his convictions or his removal from this country.  Regardless of petitioner's attempt at any argument possible, there is simply no merit to any of his claims.

**WHEREFORE,** based on the above, it is

**RECOMMENDED,** that the federal defendant's motion to dismiss (Dkt. No. 32) be **GRANTED** and the petition **DISMISSED** as to the federal defendant, and it is

**RECOMMENDED,** that petitioner's motion for a stay of deportation (Dkt. No. 38) be **DENIED,** and it is further

**RECOMMENDED,** that the petition be **DENIED and DISMISSED IN ITS**

---

[7] Although it is very difficult to determine what petitioner actually is arguing, it appears that petitioner claims that because he was still on probation from the 1997 felony conviction when he was arrested on the 2001 charges, his 1997 sentence was not completed and the conviction could not be used as a predicate felony.

[8] The court would simply note that petitioner may have multiple problems challenging the 1997 conviction, and that even if petitioner had not stated that he was currently challenging the sentence or conviction in another district, he would not have been able to challenge both convictions in this petition.  First, he is neither incarcerated in this district, nor was the 1997 conviction in this district. Additionally Rule 2 of the Rules Governing Section 2254 cases states that a petition shall attack the judgment or judgments of *one court only*.

**ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten

days within which to file written objections to the foregoing report.  Such objections

shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated: February 17, 2005

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge